408

HUMBERT
*v.*
ST. STEPHEN'S
CHURCH.

HUMBERT and others *vs.* The Rector, Church-wardens and Vestry-men of the Protestant Episcopal CHURCH OF SAINT STEPHENS in the city of New York.

The churchwardens and vestrymen of a Protestant Episcopal Church have the exclusive power of calling and inducting a minister. The persons qualified to vote for the churchwardens and vestrymen, have no such right.

In such a case a call and induction consists in a power to fix the salary as well as to make a contract with the rector and deliver him possession of the church. The term " call," as used in the statute for the incorporation of religious societies, (3 R. S. 292) is derived from the constitution of the Reformed Dutch Church.

*February* 29,
1832.

*Protestant*
*Episcopal*
*Church.*
*Power of*
*church*
*officers.*

THE seven complainants in this cause were members of St. Stephen's Church in the city of New York: a Protestant Episcopal institution.

And the following allegations were contained in their bill:

" And your orators further show unto your honor, that there " is not at this time a rector belonging to the said church of St. " Stephen.

" And further your orators show unto your honor, that the " churchwardens and vestrymen of the church of St. Stephen, " who have been duly elected according to the provisions of the " first section of the statute, entitled, ' An act to provide for " ' the incorporation of religious societies,' passed April fifth " one thousand eight hundred and thirteen, Revised Statutes, " vol. 3, page 292, as trustees, are possessed of and have the " charge and control of the property of the said church of St. " Stephen according to the provisions of the fourth section of " the said statute.

" And further your orators show, that by the eight section " of the said statute the salary of any rector who may be " called to the said church shall be fixed and ascertained by the " persons qualified to vote for churchwardens and vestrymen " of the said church.

" And your orators further show, that your orators are each
" of them duly qualified to vote for churchwardens and vestry-
" men in the said church according to the provisions of the
" first section of the said statute. And that your orators and
" many others belonging to the said church of St. Stephen, who
" are likewise duly qualified to vote as aforesaid, are entitled to
" the privileges contained in the said statute of fixing and as-
" certaining the salary of any rector who shall be called to the
" said church."

1832.

HUMBERT
v.
ST. STEPHEN'S
CHURCH.

The bill then went on to allege, that the same churchwardens
and vestrymen, not regarding the rights of the complainants,
but combining, &c., had passed a resolution, calling the Rev.
A. B. as minister, and fixing the amount of his salary : although
no meeting of the persons entitled to elect trustees had been
called.

And an injunction was prayed for against the defendants, to
restrain them " from tendering a call to or inducting the Rev.
" A. B. or any other minister as rector of St. Stephen's church
" in the city of New York at a fixed salary of $ —— or any
" other sum, without first having such salary ascertained and
" fixed by a majority of persons entitled to elect churchwardens
" and vestrymen or trustees of the said church at a meeting of
" such persons to be called for that purpose."

The master had granted an injunction pursuant to the prayer
of the bill.

A motion was now made to dissolve it.

Mr. *John Anthon*, for the defendants.

Mr. *David W. Bucklin*, for the complainants.

THE VICE-CHANCELLOR. The church of St. Stephen in
the city of New York belongs to the Protestant Episcopal de-
nomination. It was incorporated in one thousand eight hun-
dred and five, under the general law for the incorporation of
religious societies, as found in the revision of one thousand
eight hundred and one. (1 *Kent & Rad.* 336.) Owing to an
omission of the words " St. Stephen," it was re-incorporated,

*March* 19.

1832.

HUMBERT
*v.*
ST. STEPHEN'S
CHURCH.

by its present name, in one thousand eight hundred and twenty seven, under the same general law, as revised and re-enacted in one thousand eight hundred and thirteen.

The enquiry simply is : whether the eighth section of the general law, as it exists in the statute book, applies to churches of the Protestant Episcopal denomination ?

By this section it is declared, " that nothing in this act con-" tained shall be construed or taken to give to any trustee of " any church, congregation or society the power to fix or as-" certain any salary to be paid to any minister thereof, but the " same shall be ascertained by a majority of persons entitled " to elect trustees, at a meeting to be called for that purpose ; " and such salaries, when fixed, shall be ratified by the said " trustees or a majority of them, by an instrument in writing " under their common seal, which salary shall thereupon be " paid by the said trustees out of the revenues of such church, " congregation or society."

The first section of the act in question relates exclusively to Protestant Episcopal churches ; and points out how they may become incorporated. It provides for the election of two church-wardens and eight vestrymen annually, who—of themselves, but if there be a rector, then together with him—are to form a vestry and be the trustees of the church or congregation. And it declares, that the churchwardens and vestrymen shall have power to call and induct a rector to such church or congrega-tion as often as there shall be a vacancy therein.

The second section relates to the Reformed Protestant Dutch churches, and to the mode of incorporating them ; de-claring the ministers, elders and deacons (elected according to the rules and usages of such churches) to be the trustees for every such congregation.

While the third section points out how churches of other denominations generally may be formed and incorporated, by electing a number of discreet persons as trustees to take charge of the property and transact all affairs relative to the tempo-ralities thereof.

These sections, therefore, embrace all religious societies of

whatever denomination; although, taken separately, they have a distinct application.

From a perusal of the subsequent sections, both as they appear in the act of one thousand eight hundred and one, and as revised and re-enacted in one thousand eight hundred and thirteen, it will be perceived they do not apply indiscriminately to all churches or religious societies. Some of them have a reference only to those incorporated under the third section, and others to such as may be incorporated either under the second or third section. This arises from the circumstance of all the pre-existing statutes on the subject, with their various and diversified provisions, being brought together and embodied in one law.

Whether the eighth section is one of those having a reference only to incorporations under the third section remains to be seen.

The restriction in regard to the salary, which this eighth section imposes, is upon the "trustees" of any church, congregation or society; and, although it might be construed to mean all who stand in the relation of trustees, whether known by the appellation of churchwardens and vestrymen, or elders and deacons, yet it is, at least, doubtful whether it was intended to apply to them. The persons elected to preside over the temporalities of any church, under the third section, are called trustees. No other name or title is given to them. While, in the other sections, such persons are styled either churchwardens and vestrymen, or elders and deacons. It would therefore be remarkable, if it was intended to include the latter description of church officers, that something more than the word "trustees" had not been used; more especially since, in the very next section of the act of one thousand eight hundred and one, requiring all religious incorporations in the cities to render accounts of their income once in three years, the term "trustees" was supposed not to be sufficient to convey the meaning and the words " or other persons entrusted, &c." are added. And throughout the same section, " trustees or managers," and " trustees or persons entrusted as aforesaid" are constantly used as being necessary to show how persons besides those called trustees were intended to be reached.

1832.

HUMBERT
v.
ST. STEPHEN'S
CHURCH.

There is then, upon the face of the statute, a difficulty as regards the application of the eighth section; and we are required to look beyond it for its true meaning.

In *Taylor* v. *Delancy*, 2 *Caines Ca. in Error* 150, Spencer, J., in delivering the opinion of the court, and where he refers to revised laws, says, " if susceptible of doubt in their interpre- " tation, resort must be had to the law existing antecedently." Independent of this authority, it is also a well settled rule in construing statutes, that the occasion and necessity of the law, from the mischief felt and the remedy in view, are to be considered : for, from these may be collected the intention of the lawgiver, which, when discovered, is to be followed, although it may lead to a construction seemingly contrary to the letter: 1 *Kent's Com.* 432; *Jackson, ex dem. Scofield* v. *Collins,* 3 *Cow. R.* 89. I am, therefore, warranted in looking back to the several statutes as they existed antecedently to the revision, and to the occasion which gave rise to the section in question, in order to ascertain the bearing the latter is to have upon the other parts of the law.

After the adoption of our State constitution, securing to all its citizens the free exercise and enjoyment of religious profession and worship, the legislature passed the act of the sixth of April one thousand seven hundred and eighty-four, (1 *Jones & Var.* 104,) to enable all religious denominations in the State to appoint trustees and become bodies corporate, &c. The tenth section of this act is the original of the eighth section under consideration. It appears to have undergone no material or essential change. In the same session and only eleven days after passing the last mentioned act, another statute was passed for making such alterations in the charter of Trinity Church in the city of New York as would render it more conformable to the constitution of the State. The latter church and also the Reformed Protestant Dutch church held their charters from the crown and were considered the established churches. Both applied to the legislature for a confirmation of their charters, subject to such alterations as the then state of things required. One thing in particular, which was

contained in the charter and act of incorporation of Trinity
Church, they were desirous of getting rid of: it required that
the institution and induction of a rector should take place
agreeably to the king's instructions to the governor of the
colony and subject to the canonical rights and authority held
by the bishop of London over the church. This had become
a serious difficulty. It was obviated at once by the legislature's
enacting "that the churchwardens and vestrymen or a majority
" of them should be vested with full powers to call and induct
" a rector to the church so often as there should be any vacancy
therein." Thus, it appears, the legislature, immediately after
the revolution, exercised its authority in relation to churches
in three instances: 1. In confirming the charter of the Dutch
Church; 2. In confirming, with some alterations, the charter of
Trinity Church; and, 3. In passing a general law by which
churches or congregations of any religion might be incorporated
and established.

The general law did not affect the incorporated Episcopal
and Reformed Dutch churches. But it was soon perceived it
would operate against the establishment of new churches of
those particular denominations, unless they submitted to a
change in the form of their own peculiar church government.
This consideration induced them to apply for relief. The Re-
formed Dutch churches were the first to make the application.
In one thousand seven hundred and seventy-eight, a law was
passed for their relief. (2 Greenleaf, 132.) The preamble
shows the occasion and necessity for the law. In the revision
of one thousand eight hundred and one, the enacting part of it
is preserved almost *verbatim* (in the second section before men-
tioned.) In one thousand seven hundred and ninety-five, the
Protestant Episcopal church, by the standing committee of its
convention, likewise petitioned to be relieved from the act of
the sixth day of April one thousand seven hundred and eighty-
four, and went upon the ground of its directing a mode of incor-
poration which they could not comply with, unless they submitted
to an entire subversion of the usual and peculiar government of
the congregations of their church. The legislature granted
their petition by a law, passed the seventeenth day of March

1832.

HUMBERT
*v.*
ST. STEPHEN'S
CHURCH.

one thousand seven hundred and ninety-five, (3 Greenleaf, 188,) which prescribes the mode of incorporating churches of this denomination, in conformity with their views of church government, and expressly confers upon the churchwardens and vestrymen of every such congregation the same power to call and induct a rector as was declared in the case of Trinity Church. This remedial statute is preserved in the revisions of one thousand eight hundred and one and one thousand eight hundred and thirteen, and forms, substantially, the first section of the acts as there consolidated and arranged.

By bringing these laws together and re-enacting them as one statute: did the legislature intend to work a change in the principle of any of the laws as they previously existed? I think not: except where such an intention is expressed.

As regards the power in question, I perceive nothing which indicates an intention on the part of the legislature in one thousand eight hundred and one or one thousand eight hundred and thirteen to abridge or restrict the exercise of it. Nothing had occurred to render such an interference necessary. They had, only six years before the first revision, relieved the Episcopal churches from the operation of the general law and of the provisions contained in this eighth section: because those churches or congregations could not elect persons under the appellation of trustees and thus incorporate themselves, without surrendering a part of their ancient forms and usages. Their modes of church government required of them to adhere to the election of churchwardens and vestrymen, as such, and, when elected, that they should possess the power of calling and inducting the rector. These powers and privileges were granted and I cannot believe it was intended to interfere with them by bringing all the laws together and merely suffering the section to remain in the statute in the form in which it originally existed: for, the legislature would thereby have thrown back upon the Episcopal and Dutch churches a part, at least, of the embarrassment under which they had formerly laboured and from which they had sought and obtained relief.

After the fullest consideration which I have been able to bestow upon the subject, I am satisfied this particular section

has no bearing upon the churches or congregations incorporated under the first or second section of the statute, and applies to those only which are incorporated through the medium of trustees, as such, in pursuance of the third section or general law of one thousand seven hundred and eighty-four.

Another view which may be taken of this case strengthens such a conclusion. Notwithstanding the broad terms in which the eighth section appears, the power to call and induct a rector is, in the first section, expressly reserved to and declared to be in the vestry, as it formerly was. In what does the call and induction consist? I have no doubt it includes the power to fix the salary, as well as to make a contract with the rector and deliver him possession of the church. The call and induction appear to be substitutes for what is known in the common law as the right of advowson or presentation to an ecclesiastical benefice and of institution and induction. The first belongs to the founder or patron of the church; the second to the bishop, which, according to Blackstone, "is a kind of investiture of "the spiritual part of the benefice;" and the last to the church-wardens and vestrymen, which is a giving of the possession or an investiture of the temporal part, as institution is of the spiritual. The term "call," as used in the statute, is derived from the constitution of the Reformed Dutch church; and when it is made, it must necessarily contain an offer of salary, and specify the views and wishes of those tendering it, for the proposed incumbent's consideration; and if the terms be accepted, the call becomes the contract between the church and him: 6 *J. R.* 85; 8 *Cow. R.* 457. Upon the making of the contract, the call is complete. Nothing then remains to be performed but the ceremony of induction. And when the legislature once vested "full power" for these purposes in a particular body of individuals, I do not well perceive how it can be considered other than an exclusive power, and inconsistent with the right set up in the present instance by the complainants.

I must, accordingly, dissolve the injunction.

Order entered dissolving the injunction.