John MacCrate, Off. Ref.
Complaint dismissed, without costs.
A declaratory judgment is sought which will declare the rights of the parties as the result of action taken by a majority of the vestry of the Church of the Holy Trinity in Brooklyn, at meetings duly called in February, 1956 to propose and elect a rector wherein the majority voted and did select the plaintiff Sidener for the rectorship, which selection was approved by the ecclesiastical authority of the Diocese of Long Island. The defendant vestrymen and assistant minister defendant contend that the selection was not made at a meeting with a quorum present as required by the Religious Corporations Law of this State.
The local church was incorporated in accordance with that law. Its certificate of incorporation provided for the election, as members of the vestry, of two churchwardens and nine vestrymen. Six is a majority of the whole number of wardens and vestrymen. Section 42 of the Religious Corporations Law in force at the time of the meetings provides in part:
“ To constitute a quorum of the vestry or board of trustees, there must be present either:
“ 1. The rector and at least a majority of the whole number of wardens and vestrymen, or
“ 2. One churchwarden and one more than a majority of vestrymen or both churchwardens and a majority of the vestrymen, or
“ 3. If the rector be absent from the diocese and shall have been so absent for over four calendar months, or if the meeting be called by the rector and he be absent therefrom or be incapable of acting, one churchwarden and a majority of the vestrymen, or both churchwardens and one less than a majority of the vestrymen. * * *
“ The vestry may, subject to the canons of the Protestant Episcopal church in the United States, and of the Diocese in which the parish or church is situated, by a majority vote, elect a rector to fill a vacancy occurring in the rector-ship of the parish, and may fix the salary or compensation of the rector.”
*1000 The defendant Melish had been duly selected by the vestry as assistant minister when his father was the rector of the church and by action of the vestry continued as assistant minister when the rectorship of his father was terminated.
In support of the selection of the plaintiff Sidener as rector it is contended that the call and selection was governed by ecclesiastical and not civil law, but if civil law governed, the calling and selection was in accordance with that law.
The motion to dismiss the complaint is granted. The motion to strike out evidence as to matters preceding the meetings of February, 1956 is denied. The motions to dismiss the defenses of bad faith are granted.
I find that in the selection of the plaintiff Sidener canonical procedure for filling a vacancy in a rectorship was followed; that the defendants vestrymen refused to attend the meetings called in February, 1956 for the selection of a rector and made known to the Bishop of the diocese their objections to the recognition by the Bishop of plaintiff Sidener as rector by reason of the lack of a quorum and the failure of the vestry to ascertain and act in accordance with the desire of the congregation; that the vestry was composed of two wardens and nine vestrymen; that at the time of the meetings here involved there were but seven vestrymen; that there was not a statutory quorum present at said meetings. I further find:
(a) That the wardens and vestrymen who participated in the meetings of February, 1956 had participated in a meeting of the vestry in March, 1951 at which it was resolved to postpone action to elect a rector until after the annual meeting of the parish on March 20, 1951 to make certain that any future actions of the vestry as to the rectorship would have the full support and approval of the congregation.
(b) That at the annual meeting of the parish on April 6, •1953 it was resolved that it was the desire of the congregation to continue to support the defendant Melish for the rectorship.
It is my conclusion that the duty and power to elect a rector is governed by the canons of the general church and of the parish diocese and the Religious Corporations Law of this State and that the failure to consult the congregation, or to be bound by the vote of the congregation, is not a defense to the action and does not warrant turning the plaintiff Sidener from a court of equity when he seeks a declaration as to his rights. But judgment may not be entered declaring he has been selected and installed in accordance with canon and State law.
*1001 The Supreme Court of the United States has held: ‘ ‘ Freedom to select the clergy, when no improper methods of choice are proven, we think, must now be said to have federal constitutional protection as part of the free exercise of religion against state interference.” (Kedroff v. Saint Nicholas Cathedral, 344 U. S. 94, 116, revg. 302 N. Y. 1.)
In the opinion of Conway, Ch. J. in the Court of Appeals, it was said that the primary purpose of the Religious Corporations Law “is to provide for an orderly method for the administration of the property and temporalities dedicated to the use of religious groups ”. (302 N. Y. 1, 29, supra.) The reversal by the Supreme Court of the United States did not rest on a contrary determination as to the primary purpose of the Religious Corporations Law. The reversal was on the ground that article 5-C of the Religious Corporations Law prohibits the “ free exercise of an ecclesiastical right, the Church’s choice of its hierarchy.” (344 U. S. 94, 119, supra.)
The Supreme Court added: “ Ours is a government which by the ‘ law of its being ’ allows no statute, state or national, that prohibits the free exercise of religion. There are occasions when civil courts must draw lines between the responsibilities of church and state for the disposition or use of property. Even in those cases when the property right follows as an incident from decisions of the church custom or law in ecclesiastical issues, the church rule controls.” (P. 120.)
It is to be observed that the Religious Corporations Law provides that a majority of a vestry of a Protestant Episcopal Church may, “ subject to the canons of the Protestant Episcopal church in the United States, and of the diocese in which the parish or church is situated,” elect a rector and fix his salary.
That provision measures the interference which this State imposes to the freedom of selecting rectors of a Protesant Episcopal Church. The power to fill a vacancy must be exercised in conformity to the general and diocesan canons of that church.
Subdivisions 1 and 2 of section 42 of the Religious Corporations Law prescribe who must compose a quorum for a meeting of a vestry. It is there provided: “ 1. The rector and at least a majority of the whole number of wardens and vestrymen, or, 2. One churchwarden and one more than a majority of vestrymen or ”.
As I read the statutes, from 1813 to and including the present, in the light of the canons and the events giving rise to the original acts for the incorporation of Protestant Episcopal *1002 churches, there has been no interference by the State with the free selection of rectors.
The statutory provisions for the composition of quorums and for power in a majority of a vestry to elect a rector and fix his compensation appear to have been fashioned by reason of the historic structure of a vestry and by reason of the rule that all trustees must act together and collectively.
A vestry is composed of a rector, when there is one, two churchwardens and vestrymen. The number of vestrymen is that fixed by the charter or certificate of incorporation. From an early date churchwardens have had power and duties not given to or imposed upon vestrymen. One of the wardens, if there is no rector or he is absent, must preside at meetings of the vestry.
The introductory clause of section 42 of the present Religious Corporations Law reads: “ No meeting of the vestry or trustees of any incorporated Protestant Episcopal parish or church shall be held unless either all the members thereof are present, or three days’ notice thereof shall be given to each member thereof, by the rector in writing, either personally or by mail, or, if there be no rector or he is incapable of acting, by one of the churchwardens ”.
By the provision permitting a majority of the wardens and vestrymen to elect a rector and fix his compensation the statute provided an exception to the rule which requires trustees to act together and collectively. (Cf. Matter of Luckenbach, 303 N. Y. 491, 496.)
When the act of 1813 was enacted the members of the Legislature of this State were as familiar as was Edmund Burke with the prevalence of the “ dissidence of dissent ” among our inhabitants. Unanimity even among members of the same church was not expected to prevail at all times. Earlier statutes had provided for the incorporation of churches. Some churches could not seek to incorporate thereunder without changes in their form of government. In 1795, one hundred years before the enactment in 1895 of the Religious Corporations Law, the Protestant Episcopal churches had petitioned to be relieved from the necessity of changing the form and practices of that denomination to the extent required to incorporate. The Legislature granted the petition and on March 17, 1795 provided a mode of incorporation in “ conformity with their views of church government ” and expressly conferred upon the wardens and vestrymen power to call and induct a rector. That statute was preserved in the revision of *1003 1813.” (Humbert v. Saint Stephen's Church, 1 Edw. ch. 308, 314.)
Those early statutes did not specifically, as did the statutes thereafter, grant the power “ subject to the canons ”, general and diocesan. An election to the rectorship results in a status between rector and vestry and parish. The status requires for its creation ecclesiastical approval (Canon 47). Since 1895 State statutes have made the election subject to the canons.
The social or political beliefs, or the associates of the defendant Melish, or the reasons of those who selected plaintiff Sidener rather than defendant Melish, or the reasons for the refusal of the defendant vestrymen to attend meetings are of no assistance and are irrelevant to the ascertainment of what was intended by the canons and statutes. The controlling statutes and canons were not adopted because of the actions of the parties to this litigation.
The canons of the general church provide that State law or diocesan law shall govern the number, mode of election and term of office of wardens and vestrymen and the qualifications of voters. (Canon 13.) Section 2 of that canon reads: “ Except as provided by the law of the State or of the Diocese, the Vestry shall be the agents and legal representatives of the Parish in all matters concerning its corporate property and the relations of the Parish to its Clergy.”
Section 3 provides: “ Unless in conflict with the law aforesaid, the Rector, when present, shall preside in all meetings of the Vestry.”
There is no interference by the State when statutes are enacted which the canons provide shall control.
The diocese has not adopted canons declaring who or what numbers shall compose a quorum at a meeting of a vestry called to elect a rector.
The powers and duties of wardens and vestrymen are not entirely concerned with things earthy. Things earthy are not excluded from the duties and powers of a rector. He must preside at all meetings. Some can deal with property and temporalities. He has the use and control of church property for the discharge of his functions and duties. (General Canon 45.) The statute grants to the vestry which does have duties and powers concerned with matters temporal and spiritual, power to elect a rector and fix the compensation which the rector agrees to accept.
Section 25 of the Religious Corporations Law, while not applicable to a Protestant Episcopal church, indicates a legislative intent to keep trustees who are as such solely in charge *1004 of property and temporalities away from interfering with the selection of ministers. That intent was more manifest by section 5 of the act of 1895, which advised the churches that it was not intended by the general provisions of that act to give trustees of property control over the calling of ministers or the fixing of salary, “ except when they are also the spiritual officers of the church.”
The provisions in the Laws of 1813 (ch. 60, § I), hereafter set forth, granted power to a vestry to call a rector and required, as does the present statute, three days’ notice of a meeting to be given by a rector or by a churchwarden, if there was no rector or he was unable to act. It would appear that it was intended by the act of 1813 if there was no rector, that a quorum composed of at least one churchwarden and a majority of the vestrymen had to be present at meeting to permit action on any matter relating to property or the election of a rector. The quorum had to have at least one churchwarden and a majority of the vestrymen.
The act of 1813 provided that the churchwardens and vestrymen “ shall have power to call and induct a rector to such church or congregation as often as there shall be a vacancy therein: Provided hoto ever, That no meeting or board of such trustee shall be held, unless at least three days notice thereof shall be given in writing under the hand of the rector or one of the church wardens; and that no such board shall be competent to transact any business unless the rector, if there be one, and at least one of the church wardens and a majority of the vestrymen be present; and such rector, if there be one, and if not, then the church wardens present, or if both the church wardens be present, then the church warden who shall be called to the chair by a majority of voices, shall preside at every such meeting or board, and have the casting vote.”
Section VIII of the act of 1813 provided: “ VIII. And be it further enacted, That nothing in this act contained shall be construed or taken to give to any trustee of any church, congregation or society, the power to fix or ascertain any salary to be paid to any minister thereof, but the same shall be ascertained by a majority of persons entitled to elect trustees, at a meeting to be called for that purpose, and such salaries, when fixed, shall be ratified by the said trustees, or a majority of them, by an instrument in writing under their common seal, which salary shall thereupon be paid by the said trustees out of the revenues of such church, congregation or society.”
The cases which considered the question held that section VTII of the Laws of 1813 did not apply to a Protestant Episcopal *1005 Church. (Humbert v. Saint Stephen’s Church, 1 Edw. Ch. 308, 311.)
In that case it was stated: “ There is then, upon the face of the statute, a difficulty as regards the application of the eighth section; and we are required to look beyond it for its true meaning. In Taylor v. Delancy, 2 Caines’ Ca. in Error 150, Spencer, J. in delivering the opinion of the court, and where he refers to revised laws, says, ‘ if susceptible of doubt in their interpretation, resort must be had to the law existing antecedently.’ ”
That language is applicable to the solution of the problems presented by this litigation.
The act of 1813, as is shown by the above quotation from section 1 thereof, provided that a churchwarden “ shall preside ” “ and have the casting vote.”
Until 1895, when the Religious Corporations Law was enacted, the provisions of section 1 of the act of 1813 appear to have been the statutory law applicable to vestry meetings. While the act of 1813 provided that if two churchwardens were present at a meeting, the one chosen by “ a majority of voices ” .should preside, the statute did not provide that a quorum could exist if two wardens were present with one less than a majority of the vestrymen. The statutory purpose would appear to have been to preserve the right of the churchwarden to vote when he presided, and to have, in addition, ‘ ‘ the casting vote ’ ’ which a rector would have had as presiding officer of the vestry.
The Religious Corporations Law was enacted in 1895 (L. 1895, ch. 723). It was then provided by section 32, as it is now by section 42, that all the members of the vestry must be present at a meeting unless there are three days’ notice of a meeting. Quorums required the presence of: -
“ 1. The rector, at least one of the churchwardens and a majority of the vestrymen; or,
“ 2. The rector, both churchwardens and one less than a majority of the vestrymen;” or, The third provision was the same as that of the present statute which has been quoted above. By the act of 1895 and all succeeding acts, including the present, each member of the vestry “ shall be entitled to one vote.”
No casting vote was or is provided for.
As I read the act of 1895 and that of 1909, which carried the provisions of the 1895 act into the Consolidated Laws in 1909, power was granted to a majority of a vestry to elect a rector and fix his compensation at a meeting where one warden and a majority of the vestrymen, or two wardens and one less than a majority of the vestrymen were present-
*1006 If the amendment in 1919 of section 42 (L. 1909, ch. 53, as amd. by L. 1919, ch. 267, § 1), did not work a change in the composition of a quorum for a meeting to elect a rector, the plaintiff Sidener had been duly elected.
No evidence has been offered which would permit a finding that a general or diocesan canon made provisions for a quorum at vestry meetings to elect a rector different than that established by statute for incorporated churches in this State.
The specific provisions of the 1895 act, as to the composition of a quorum, read literally, sug’gest that the quorums were for meetings only when a parish had a rector. The statute was silent as to the persons or number necessary for a quorum if a parish was without a rector. It is unreasonable to assume that power to elect was intended to be nullified by specific provisions for quorums which could not be complied with. In the absence of the rector from a meeting of his parish vestry, a vestry could not and cannot take any action impairing the rights of the rector. It would appear that the legislative purpose by the provisions of the Religious Corporations Law of 1895 was to continue power to elect a rector at a meeting attended by at least one warden and a majority of the vestrymen, as was permitted by statute for nearly a century, or at a meeting where two wardens and one less than a majority were present.
Procedure for the filling of a vacancy in the rectorship is set forth in the canons and the Book of Common Prayer. However, they did not prescribe who shall constitute a quorum for meetings for that purpose at the time of the meetings here involved.
The amendment in 1919 of the act of 1909 requires the presence of the same number of persons for a quorum composed of a rector and a majority of the whole number of the vestry and for a quorum composed of one churchwarden and one more than a majority of the vestrymen, or two wardens and a majority of the vestrymen. The amendment did not touch provision 3 of the act of 1909. That was allowed to remain as were all the provisions following it with no change in language.
It would appear that the legislative intent was to insure the presence of one more than a majority of the whole vestry at a meeting called to elect a rector. A warden must preside. A vote of a majority of the whole number of the vestry is required to elect a rector. Instead of granting to the presiding warden the casting vote, as did the act of 1813, the Legislature *1007 provided for the presence of an additional vestryman to be present. Each one present is entitled to one vote.
The Legislature apparently intended to provide who shall constitute a quorum for all meetings which may be concerned with matters affecting parish property and temporalities or the election of a rector. Had the intention been to permit a majority of the whole number of a vestry to be a quorum when there is no rector, it would seem that an exception to that effect would have been inserted in provision 2 of section 42 or that provision 1 would have so stated.
Were the provisions of section 41 of the General Construction Law or those of paragraph 2 of Canon 11 of the General Canons applicable to meetings of a vestry, the refusal of the defendant vestrymen to attend would have permitted the election of the plaintiff Sidener by the six members who did attend the meetings. But section 41 o'f the General Construction Law governs only meetings of “ public officers ” and Canon 11 applies only to bodies which are directed by a General Canon to exercise a power or perform a duty.
, Therefore, while I find that the defendants have prevented .the plaintiff Sidener performing the functions of the rector of this parish, an injunction cannot be issued because there was not present at the meetings a legal quorum.
Judgment is directed accordingly. The parties may submit proposals for additional findings.